# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| In re: APPLE iPHONE 3G AND 3GS "MMS" MARKETING AND SALES PRACTICES LITIGATION | CIVIL ACTION NO. _____ |
| This Document Relates to: | JUDGE _____ |
| JOEY ALEMAN, individually and on behalf of all others similarly situated | JURY TRIAL DEMANDED |
| Plaintiff | |
| versus | |
| APPLE INC., and AT&T Mobility, L.L.C. | |
| Defendants | |

## CLASS ACTION COMPLAINT

NOW INTO COURT, through undersigned counsel, comes plaintiff, JOEY ALEMAN, being of the full age of majority, domiciled in Galveston County, State of Texas, who files this claim individually and as a representative of all others similarly situated and respectfully alleges as follows:

1.

JOEY ALEMAN, an individual of the full age of majority, is domiciled in Galveston County, State of Texas.

2.

Made defendant herein is APPLE, INC. ("Apple"), a California corporation with its principal place of business in Cupertino, California and doing business within the State of Texas and the jurisdiction of this Honorable Court.

3.

The defendant herein is AT&T MOBILITY, L.L.C., ("AT&T) a Delaware limited liability corporation with its principal place of business in Atlanta, Georgia authorized to do and doing business within the State of Texas and jurisdiction of this Honorable Court.

## JURISDICTION

4.

This Honorable Court is vested with jurisdiction by virtue of 28 U.S.C. § 1332. Plaintiff is a domiciliary of the State of Texas and defendants are domicilaries of a state other than the State of Texas. This punitive class action is brought by the named plaintiff herein on behalf of all others similarly situated; each of whom are domiciled within the State of Texas. Further, the amount in controversy exceeds $5,000,000.00.

## VENUE

5.

Plaintiff alleges that at all times material hereto, he resided in the Southern District of Texas, Galveston Devision, such that venue in this Honorable Court is proper.

## FACTS

6.

In January 2007, the iPhone was launched. The iPhone was manufactured and created by Defendant Apple. The iPhone is a combination of an iPod (which stores thousands of music files and plays them back for the listener) and a cellular phone (which allows users to talk on the telephone while mobile) with an incredible amount of creative functionality. The cell phone portion of the iPhone works exclusively with the AT&T cellular phone network. Defendants Apple and AT&T launched the iPhone as a joint venture. Both AT&T and Apple sold the

2

iPhone in their respective stores.

7.

The original version of the iPhone was called the "2G". The next generation, launched in July 2008, was called the "3G." The most recent version, launched in June 2009, is called the "3G-S."

8.

Since its creation, one flaw of the original 2G iPhone was that it did not allow "Multimedia Messaging Service" or "MMS" which, among other things, allows users to send a picture to another user's phone.

9.

Apple advertised heavily that the new version of iPhone, the 3G, as well as the even newer version, the 3G-S, would allow MMS. Apple's print and video advertisements in and on television, the Internet, the radio, newspapers, and direct mailers all touted the availability of MMS.

10.

Similarly, AT&T advertised that the 3G and 3G-S would allow MMS. MMS functionality was one of the reasons people chose to buy or upgrade to a 3G or 3G-S.

11.

MMS has been available on other types of cell phones for many years.

12.

From Apple's website:

***Send MMS***

*Take a photo or shoot some video, then send it via Messages.  You can also send audio recordings from within Messages, information form Contacts, and directions from Maps.*

3

13.

A Pop-Up window on Apple's website reads:

**_Sending Photos and Videos_**

_You can take a photo or make a video (iPhone 3GS only) from within Messages and include it in your conversation with another MMS-capable device._

From AT&T's website:

**_Messages_**

_Use messages to send text, photos, audio, video, and more.   Forward a whole message or just the important parts._

14.

After the 3G iPhone came out in July 2008, customers who purchased the 3G iPhone

began to realize that MMS was not available.

15.

In response, AT&T published this in the AT&T Answer Center page of its website for

problems related to MMS:

_Customers who are sent a MMS message and own a non-MMS capable device will receive a message instead of an actual MMS message.   The message will contain the website address of www.viewmymessage.com/1  or  www.viewmymessage.com/2 as well as a user name and password.  To view the MMS message, please access the website from a computer and enter the user name and password provided in the text message._

16.

Incredibly, AT&T was directing customers interested in MMS to **go to a computer** to

view the message.

17.

The AT&T Answer Center has this unhelpful solution to the problem. *"Send, Receive, or Delete a Picture, Audio, or Video Multi-Media Message (MMS) with iPhone"*:

> **Goal:** *Send, Receive, or Delete a Picture, Audio or Video Multi-media Message with iPhone.*
>
> **Symptom:** *Unable to Send, Receive, or Delete a Picture, Audio or Video Multimedia Message with iPhone.*
>
> **Fix:** *iPhone does not support sending, or receiving picture, audio, or video multimedia messages. If an MMS is sent to the iPhone, it will receive a text message instead that contains a link to a website address where the message can be viewed.*

The "Fix" was essentially to say "tough luck."

18.

In early 2009, sales representatives for both Apple and AT&T began assuring customers that MMS would be available on both the 3G and the 3G-S beginning on June 17, 2009, when the new iPhone OS 3.0 Software Update would become available. Representatives in Apple and AT&T stores assured customers that with this new application, which could be downloaded for free, MMS would be available.

19.

In the spring of 2009, AT&T began a huge sales drive to sell its older 3G models in preparation for the launch of the 3G-S. AT&T lowered the price of the 3G to less than $100.00 and assured customers that the new 3.0 Software Upgrade would solve all their problems. Apple posted on its website, on the "iPhone OS 3.0 Software Update" page, that MMS would be available, so that customers could "send MMS messages and include photos, audio, and contact information. Even tap to snap a picture right inside messages." A graphic showed the familiar

iPhone test message bubbles with a picture inserted.

20.

Millions of customers, including Texas residents, purchased the 3G and 3G-S, waiting for the day in June 2009 when the new application would be available which would allow MMS. Unfortunately, after downloading the new 3.0 Software Update application, MMS still did not work on both the 3G and 3G-S.

21.

The Apple troubleshooting page explained the problem:

*To send and receive MMS messages on your iPhone 3G, do the following:*

*1.       Verify that your iPhone and wireless carrier meet the system requirements.  To use MMS you need:*

      --   *iPhone OS 3.0 installed on iPhone 3G.  The original iPhone does not support sending or receiving MMS messages.  Install iPhone OS 3.0 if necessary.*
      --   *A wireless carrier that supports MMS*
      --   *A coverage area in which you can place and receive a call, and access the Internet using Safari on your iPhone (3G network coverage recommended).*

*2.       If **this article** shows that your carrier supports MMS, you should see MMS Messaging in the Settings>Messages>General screen as shown below.*

22.

The "this article" phrase was a blue-colored hyperlink.  Clicking on that hyperlink leads to a page showing several countries.  Clicking on North America, and viewing the graph for USA, under the heading "AT&T" it shows that AT&T is NOT a carrier which offers MMS!  Of course, AT&T is the ONLY carrier in the United States used by the iPhone.  In other words, AT&T towers do not support MMS.

23.

Calling Apple Customer Support reveals that AT&T has never upgraded its towers so as to support the functionality necessary for MMS. Therefore, the iPhone cannot offer MMS as claimed.

24.

The only excuse offered by AT&T and Apple is a mouseprint disclaimer on the website, in barely readable font, which reads *"MMS Support for AT&T coming in late summer."*

25.

None of the representatives in either the Apple or AT&T stores advise consumers that the MMS functionality of the phones will only work after the AT&T towers are upgraded to support MMS in "late summer."

26.

When and if AT&T finally upgrades its towers, the millions of iPhone purchasers will get what they bargained for in terms of MMS. But in the meantime, all the millions of purchasers of the iPhone have been deceived and cheated out of what they thought they were purchasing a phone with MMS functionality.

27.

Apple and AT&T representatives continue to misrepresent and/or conceal, suppress, or omit material facts to customers in their stores about the MMS functionality of the iPhones.

**NAMED PLAINTIFF'S FACTUAL ALLEGATIONS**

28.

Joey Aleman went into an AT&T store and was interested in a phone with MMS functionality. The store representative misrepresented and/or concealed, suppressed, or omitted

7

material facts as to the iPhone having MMS functionality.

29.

Plaintiff purchased the iPhone primarily for personal, family, or household purposes.

30.

Plaintiff has been damaged in that for months he has been unable to send MMS messages.

## CLASS ALLEGATIONS

31.

Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23(b)(3) on behalf of all residents or individuals of Texas on behalf of himself and thousands of other iPhone 3G and 3G-S purchasers from Apple and AT&T who are similarly situated to Plaintiff and who reside in the State of Texas.  The class is defined as follows:

## CLASS DEFINTION

**All residents of Texas who, between July 1, 2008 and the date of final judgment or settlement, have purchased a 3G or 3G-S iPhone from either AT&T Mobility L.L.C. or Apple, Inc. for personal, family, or household use.**

32.

The class is so numerous that joinder of all issues is impracticable.  The class is so numerous that joinder of all members is impractical.  Published news reports stated that more than a million customers purchased the 3G iPhone the day it became available.  Many of those customers are located in Texas.  It is estimated that the Class will be composed of at least 10,000 individuals.  Plaintiff will be claiming damages for the iPhone he purchased.  An iPhone was selling from anywhere between $100 and $500.  Additionally, no attorney would have the

financial resources to litigate this case against opposition from the Defendants when the potential for recovery is so small for each class member.  Therefore, joinder of all similarly situated plaintiff is appropriate.

33.

The claims asserted by Plaintiff on behalf of himself and all similarly situated Class members present questions of fact or law common to the Class, including, *inter alia*, whether Defendants engaged in deceptions and concealments in making claims that MMS was available on the 3G and 3G-S.  Questions of law and fact common to the members of the class predominate over questions affecting individual members.  Those common questions of law and fact include:

**Fact Questions:**

a)    Did the Defendants know that AT&T has not upgraded its towers to support MMS, and, if so, when did they gain this knowledge;

b)    Did the Defendants know that most customers viewed MMS as an important functionality;

c)    Did the Defendants conceal from consumers that: (1) AT&T had not upgraded its towers to support MMS and had no plans to do so for many months; and (2) the 3.0 Software Upgrade would not fix the problem and make MMS available (by itself);

d)    Were Defendants aware of alternative methods of disclosure which would have more adequately warned customers of the unavailability of MMS and the reason for the non-availability of MMS;

e)    Did the Defendants market and advertise their iPhones as supporting MMS with

9

no mention, or little mention, of the fact that AT&T towers were not equipped to support MMS;

f) Do the salespersons at Apple and AT&T have any scripts or training materials which would provide them with knowledge or information as to the fact that AT&T towers do not support MMS, or any advice as to when the towers will support MMS;

g) According to Apple's and AT&T's marketing research, is MMS functionality an important decision driver for residential consumers when buying iPhones;

h) When will AT&T have finished its tower upgrade;

i) Did any officials from AT&T or Apple believe that the advertisements to customers relating to MMS were misleading to consumers;

k) What did Defendants tell their own managers and employees internally about MMS functionality;

l.) Were any committees or work groups created to solve the MMS problem, and what was said in their meetings;

m) Why don't Apple and AT&T tell customers the truth about MMS when the customer is buying the product in the store; and

n) Other fact questions

**Legal Questions:**

a) Did the Defendants engage in an unfair practice in connection with the sale or advertisement of merchandise when they represented to Texas consumers that their iPhones would have MMS functionality;

b) Did the Defendants employ any deception, false pretense, false promise, or

misrepresentation, in connection with the sale or advertisement of merchandise under the Texas Deceptive Trade Practices Act ("TDTPA") when they represented to Texas consumers that their iPhone would have MMS functionality;

c)      Did the Defendants employ any deception, false pretense, false promise, or misrepresentation, in connection with the sale or advertisement of merchandise under the TDTPA when they represented to Texas consumers that the 3.0 Software Upgrade would allow their iPhones to have MMS functionality;

d)      Did the Defendants conceal, suppress or omit material facts when they failed to reveal to consumers that: (a) the towers of AT&T-- the exclusive phone network for the iPhone--did not support MMS functionality; (b) AT&T would not have the towers upgraded from many months; and (c) the 3.0 software Upgrade would not, by itself, solve the problem;

e)      To what extent and in what amount were Plaintiff and the Class damaged by Defendants' unlawful actions;

f)      Do the Defendants have affirmative defenses which are common to call class members; and

g)      Other legal questions

34.

The claims asserted by Plaintiff on behalf of himself are typical of the other Class members' claims in that the other Class members also received similar representations about MMS.

35.

Plaintiff will fairly and adequately represent and protect the interests of the Class because:

11

a)   Plaintiff has retained counsel experienced in the prosecution of class action litigation and counsel will adequately represent the interests of the class;

b)   Plaintiff and his counsel are aware of no conflicts of interest between plaintiff and absent class members or otherwise;

c)   Plaintiff has, or can acquire, adequate financial resources to assure that the interests of the class will not be harmed; and

d)   Plaintiff is knowledgeable concerning the subject matter of this action and will assist counsel in the prosecution of this litigation.

36.

A class action provides a fair and efficient method for adjudicating this controversy and is superior to the other available methods of adjudication in that:

a)   Neither the size of the class, nor any other factor, makes it likely that difficulties will be encountered in the management of this Class as a class action;

b)   The prosecution of separate actions by individual class members, or the individual joinders of all class members in this action, is impracticable and would create a massive and unnecessary burden on the resources of the courts and could result in inconsistent adjudications while a single class action can determine, with judicial economy, the rights of each member of the Class;

c)   Because of the disparity of resources available to defendants versus those available to individual class members, prosecution of separate actions would work a financial hardship on many class members; and

d)   The conduct of this action as a class action conserves the resources of the parties and the court system and protects the rights of each member of the class and

meets all due process requirements as to fairness to all parties.

e)    A class action is also superior to maintenance of these claims on a claim by claim

basis when all actions arise form the same circumstances and course of conduct.

**COUNT I**

**Texas Deceptive Trade Practices Act ("TDTPA")**

37.

Plaintiff re-alleges and incorporates all preceding paragraphs of this Complaint as if fully

set forth here, and further alleges as follows:

38.

Plaintiff brings claims against the Defendants under TDTPA, Tex. Bus. & Com. Code

Ann. § 17.41 *et seq* (Vernon 1987).

39.

Defendants misrepresented, concealed, suppressed, or omitted the following material

facts in connection with the sale and advertisement of the iPhones to consumers in Texas:

a)    AT&T has not upgraded its towers to support MMS, and therefore MMS would be unavailable on iPhones until the towers were upgraded;

b)    AT&T would not have the towers upgraded for many months; and

c)    The 3.0 Software Upgrade would not, by itself, solve the problem and make MMS available.

40.

Defendants employed, in connection with the sale and advertisement of iPhones, to Texas

consumers, deception, false pretense, false promise, misrepresentation, and unfair practices,

including but not limited to representing that the phones would support MMS when Defendants

knew, in fact, that they would not support MMS.

13

41.

As a direct result of the deceptions, false pretenses, misrepresentation, unfair practices, concealments, suppressions, and omissions of Defendants, Plaintiff have suffered an ascertainable loss of money, namely the difference in value between the iPhone as represented and the iPhone as it actually exists.

42.

Moreover, Defendants' actions were intentional and outrageous, without any justification or excuse, and warrants the imposition of treble damages under the TDTPA.

43.

In the event Plaintiff is the prevailing party, Plaintiff also seeks reasonable attorneys' fees and costs as provided under the TDTPA.

## COUNT II

### Unjust Enrichment

44.

Plaintiff re-alleges and incorporates all preceding paragraphs of this Complaint as of fully set forth here, and further allege as follows:

45.

The Defendants have been enriched from the selling and manufacturing of a defective product and the Plaintiff and the class has been correspondingly impoverished by purchasing or paying for the defective product. There was no justification or cause for Defendants' enrichment or Plaintiff's and the Class' resulting impoverishment.

46.

Defendants' enrichment at the expense or impoverishment of the Plaintiff and the Class is

inequitable. Although the Plaintiff and the Class have alleged that they enjoy remedies at law against Defendants, to the extent that the Plaintiff and the Class do not enjoy remedies at law, Defendants should be made to return all sums unjustly obtained from Plaintiff and the Class.

47.

Plaintiff demands that Apple Inc, and AT&T Mobility, LLC return all such monies acquired from Plaintiff and the Class through the selling of the Apple iPhone.

## RELIEF SOUGHT

48.

Plaintiff reincorporates and realleges Paragraphs 1 through 47 as if more fully set forth herein.

49.

Plaintiff and the proposed class members demand a trial by jury.

**WHEREFORE,** Plaintiff and all similarly situated individuals who do not opt out of this action demand:

a)   an order, entered as soon as practicable, certifying this case as a class action under Rule 23.

b)   an order directing that appropriate notice to class members be delivered;

c)   an order appointing the undersigned Class Counsel

c)   compensatory damages for Plaintiff and the other Class members in an amount which is fair and reasonable to compensate them for their damages;

d)   all damages in an amount which is fair and reasonable;

e)   reasonable attorneys' fees and costs; and

f)   all such other relief as the Court deems just and proper

15

Respectfully submitted,

**SADIN LAW FIRM, P.C.**

ARTHUR SADIN
Texas State Bar No. 17508450
NOK SUDDHIPRAKARN
Texas State Bar No. 24166162
121 Magnolia, Ste. 102
Friendswood, Texas  77546
Telephone:  281-648-7711
Facsimile:   281-648-7799

ATTORNEYS FOR PLAINTIFF